# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ALVIN ABRAMS**<br>5837 Kittewan Court,<br>Manassas, Virginia 20112<br><br>    Plaintiff,<br><br>        v.<br><br>**DISTRICT OF COLUMBIA,**<br>   **A MUNICIPAL CORPORATION**,<br><br>*Serve:*<br><br>Karl A. Racine, Attorney General<br>for the District of Columbia<br>   c/o designee Darlene Fields, Gale Rivers,<br>   or Tonia Robinson<br>Office of the Attorney General for the<br>   District of Columbia<br>441 4th Street, NW<br>Suite 600 South<br>Washington, DC 20001<br><br>The Honorable Muriel Bowser, Mayor of<br>the District of Columbia<br>   c/o designee Darlene Fields, Gale Rivers,<br>   or Tonia Robinson<br>Office of the Attorney General for the<br>   District of Columbia<br>441 4th Street, NW<br>Suite 600 South<br>Washington, DC 20001<br><br>    Defendant. | Case No.<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Alvin Abrams, by his undersigned counsel, alleges as follows against Defendant District of Columbia:

## INTRODUCTION

1. Mr. Abrams, lead Supervisory Investigator, was issued a Letter of Concern and his employment was terminated due to the fact that, *inter alia*, he refused to conduct hasty background investigations of police officer applicants and rush through, unvetted and unqualified candidates to become members of the District of Columbia Metropolitan Police Department (MPD).

2. MPD is required to conduct background investigations in accordance with D.C. Code § 5-107.04, DCMR §§ 6-A106, 6-B873 ("873 Guidelines"), Special Orders SO-10-16 and SO-16-06. (Hereinafter referred to as "legal and MPD requirements.")

3. These legal and MPD requirements ensure that the police officer applicants possess certain qualifications (*e.g.*, *inter alia*, a valid driver's license) and ensure that the police officer applicants do not have any disqualifying events (*e.g.*, *inter alia*, been dishonorably discharged from military service) or events that may disqualify the applicant (*e.g.*, *inter alia*, been given less than an honorable discharge from the military). *See* D.C. Code § 5-107.04, DCMR §§ 6-A106, 6-B873, Special Orders SO-10-16 and SO-16-06.

4. Mr. Abrams was asked to break the law by rushing through police officer applicants who should have been disqualified and to ignore the legal and MPD requirements in order to fill a retirement bubble that the DC MPD is currently experiencing.

5. Conducting unlawful background investigations leads to serious consequences – including hiring police officers who have themselves been convicted of crimes.

6. Currently, it is common knowledge that if you cannot pass the background investigation to become a police officer with other police departments in the region – including Baltimore City Police, Prince George's County Police, Arlington County Police, Prince William

County Police, to name a few – you should apply to the DC MPD because it has a reputation of being the police department with the least stringent, and at times even sloppy, background investigations.

7. As lead Supervisory Investigator, Mr. Abrams at all times carried out background investigations in accordance with the legal and MPD requirements so as to ensure that no individual with a disqualifying event would slip through the cracks and join the DC MPD.

## NATURE OF THE CASE

8. Plaintiff alleges that Defendant unlawfully issued him a Letter of Concern and unlawfully terminated his employment in violation of the District of Columbia Whistleblower Protection Act (WPA), D.C. Code § 1-615.51 *et seq.*, because he refused to comply with illegal orders and because he made protected disclosures that he reasonably believed evidenced gross mismanagement, gross misuse or waste of public resources or funds, a violation of District law, rule, and/or regulations, and a substantial and specific danger to public safety.

9. Plaintiff also alleges that Defendant unlawfully terminated his employment in violation of public policy because he refused to violate the law by conducting hasty background investigations of police officer applicants.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the state law claims asserted herein based on the diversity of the parties pursuant to 28 U.S.C. § 1332.

11. The Superior Court of the District of Columbia would have jurisdiction over the state law claims asserted herein under D.C. Code § 1-615.54 and § 11-921.

12. Venue is proper in the United States District Court for the District of Columbia pursuant to

28 U.S.C. § 1391 because Defendant employed Plaintiff within the District of Columbia and the actions giving rise to Plaintiff's claims occurred within the District of Columbia.

13. Plaintiff provided his Notice of Claim letter to the D.C. Office of Risk Management pursuant to D.C. Code § 12-309 on August 3, 2018.

## THE PARTIES

14. Plaintiff Alvin Abrams is a citizen of the State of Virginia, with his address of residence at 5837 Kittewan Court, Manassas, Virginia 20112.

15. During the relevant time period, Defendant was Plaintiff's employer, within the meaning of, and subject to, the requirements of the WPA.

16. Defendant District of Columbia is a municipal corporation that may be sued under D.C. Code § 1-102.

17. The Metropolitan Police Department (MPD) is the primary law enforcement agency for the District of Columbia.

## FACTS

*Background Information*

18. The MPD Professional Development Bureau (PDB) is a specialized unit of MPD.

19. One of PDB's priorities is to ensure that the MPD hires the best applicants.

20. MPD is required to conduct background investigations in accordance with D.C. Code § 5-107.04, DCMR §§ 6-A106, 6-B873 ("873 Guidelines"), Special Orders SO-10-16 and SO-16-06.

21. On June 13, 2016, Mr. Abrams joined MPD PDB in the position of Supervisory Investigator.

22. Mr. Abram's duties and responsibilities included, *inter alia*, managing and supervising

seven background investigators; reviewing all reports of investigations for completion and timeliness, including adherence to deadlines; monitoring of performance markers and program accomplishments of the staff; providing report writing guidance and revisions to investigators; briefing senior level managers on the status of investigations; and making internal decisions pursuant to local and federal rules and regulations regarding pre-employment background investigations.

23. In or around July 2017, Mr. Abrams was assigned the additional duties of managing five additional investigators; serving as training coordinator; serving as lead supervisor for Mass Applicant Processing (MAP); overseeing the completion of all background investigations; and procurement specialist.

24. In or around September 2017, Plaintiff received a "Role Model" performance evaluation for the 2017 performance year.

25. In or around January and February 2018, MPD Recruiting came under intense pressure to hire 30 or more police officer recruits per month (up from an average of approximately 25 per month) to offset a retirement bubble.

26. As a result, internal policies and protocols were changed to meet that demand and Mr. Abrams and others were given unrealistic quotas and deadlines in which to complete background investigations and were instructed to spend far less time conducting background investigations than necessary to comply with the applicable legal and MPD requirements.

27. These new requirements conflicted with the legal and MPD requirements that Mr. Abrams understood he was required to follow regarding conducting pre-employment background investigations.

*Changes to Mass Applicant Processing Investigations*

28. As the lead Supervisory Investigator, Mr. Abrams conducted pre-employment applicant screening interviews, known as the Mass Applicant Processing (MAP) investigations, twice per month at MAP events.

29. During the MAP investigations, each applicant was screened for, *inter alia,* felonies, recent arrests, and terminations from employment as set forth in the 873 Guidelines in order to determine whether the applicant was eligible to become a police officer and to assess the applicant's qualifications.

30. On average, it took approximately 15-20 minutes to conduct one MAP investigation.

31. In January 2018, however, Marvin Haiman, Executive Director, PDB, instructed Mr. Abrams to take no longer than five minutes to conduct one MAP investigation.

32. Director Haiman explained to Mr. Abrams that if the applicant was not disqualified during the five-minute MAP investigation, the applicant should be provided a conditional offer of employment and proceed to the full scope background investigation.

33. After Director Haiman instructed Mr. Abrams to take only five minutes for the MAP investigations, Director Haiman began reviewing Mr. Abrams' decisions to disqualify applicants who had derogatory information revealed in the MAP investigation and reversed Mr. Abrams' decisions to disqualify certain applicants.

34. For example, in January 2018, Director Haiman reversed Mr. Abrams' decision to disqualify an applicant who self-reported an arrest for urination in public and public intoxication in 2017.

35. This applicant was sent through to the full scope background investigation, during which he was disqualified.

*Changes to Full Scope Background Investigations*

36. During the full scope background investigations, MPD is provided additional information from the applicants and they are screened against the criteria set forth in the 873 Guidelines.

37. In February 2018, Rose Gross was hired as the second Supervisory Investigator.

38. Before Ms. Gross was hired, Mr. Abrams was required to complete 25 full scope background investigations per month.

39. When Ms. Gross was hired, Kathleen Crenshaw, Recruiting Division Director for MPD PDB, set a new quota requiring Mr. Abrams and Ms. Gross to each complete five full scope background investigations per week such that 40 full scope background investigations were completed per month.

40. This was the first time Mr. Abrams was given a weekly quota and this new mandate shortened the time Mr. Abrams had to conduct background investigations of police officer applicants.

41. In or around February or March 2018, Director Crenshaw, Director Haiman, and Captain Judith Mack, Recruiting Division Deputy Director for MPD PDB, issued a new mandate that full scope background investigations were required to be conducted in 42 days or less—no matter the complexity of the investigation in addition to completing five full scope investigations per week.

*Plaintiff Conducts Background Investigations in Compliance with the Law*

42. Despite the mandate to complete five full scope investigations per week and to have no background investigation take longer than 42 days, Mr. Abrams took the time he needed to comply with the applicable legal and MPD requirements regarding conducting a

thorough background check.

43. As a result, Mr. Abrams was not always able to submit five cases per week to Director Crenshaw and was not always able to conduct all background investigations in 42 days or less as directed.

44. When Mr. Abrams was unable to meet these new demands, he would inform Director Crenshaw that he was unable to do so because it was not possible to complete a thorough background check for certain applicants within these new timelines and quotas.

*Plaintiff Reports his Concerns Regarding Changes to Investigations*

45. Mr. Abrams communicated to his supervisors his disagreement with the decisions to decrease the MAP investigation from 15-20 minutes to 5 minutes per applicant and to shorten the time to conduct full scope background investigations.

46. On January 14, 2018, Mr. Abrams raised concerns *via* email to Director Crenshaw and Captain Mack regarding the new requirements to rush both the MAP investigation and the full scope background investigations.

47. With regards to the full scope background investigations, Mr. Abrams explained to Director Crenshaw and Captain Mack that while the average investigation for new recruits within MPD takes two and a half to three months, and the national average is three to four months, Director Crenshaw was now demanding Mr. Abrams to complete background investigations in two cases that were less than 30 days old.

48. Mr. Abrams explained that it was nearly impossible to complete a full scope background investigation in such a short timeframe while also complying with the applicable legal and MPD requirements regarding conducting background investigations.

49. On March 14, 2018, Mr. Abrams expressed concerns to Director Crenshaw, Director Haiman, and Captain Mack *via* email that completing background investigations within 42 days would not allow for background investigations to comply with the 873 Guidelines and would result in hasty and premature decisions about new police officer recruits, which would have detrimental effects on the integrity and thoroughness of the MPD hiring process.

50. That same day, Director Crenshaw responded, disregarding Mr. Abrams' concerns.

*Plaintiff Advises his Supervisors Regarding Violations of ADA and Ban the Box*

51. In or around February 2018, Mr. Abrams informed Director Haiman *via* email that the Recruiting Division was not in compliance with the American Disabilities Act (ADA), 42 U.S.C. §§ 12101-12113 *et seq.* and 12131-12133 *et seq.*, because it was requiring applicants to answer questions about their medical history and disabilities prior to accepting a conditional offer of employment.

52. Director Haiman agreed that the Recruiting Division was not in compliance with the ADA and indicated that he would make the necessary corrections to the Employment Statement of Personal History (ESOPH), the software system used to conduct and track background investigations of police officer and civilian applicants.

53. However, as of April 20, 2018, the MPD Recruiting Division still had not taken corrective measures to become compliant with the ADA.

54. In or around late February or early March 2018, Mr. Abrams asked Director Haiman *via* email whether the Recruiting Division was complying with the District of Columbia's Fair Criminal Record Screening Act, also known as "Ban the Box," D.C. Code §§ 32-1341 *et seq.*, which prohibits employers from asking applicants about their arrest record, charges or

criminal accusations, and convictions prior to accepting a conditional offer of employment.

55. Director Haiman told Mr. Abrams that the Division was complying with the law when in fact it was violating the law.

56. Prior to a conditional offer of employment being extended to the applicant, MPD asked questions in the MAP questionnaire regarding prior arrest history, criminal convictions, and any criminal cases to which the applicant was or had been a party.

57. As of April 20, 2018, MPD continued to ask these questions despite Director Haiman's assertion that MPD was in compliance with Ban the Box.

*Letter of Concern and Termination*

58. On April 2, 2018, Director Crenshaw issued a Letter of Concern to Mr. Abrams, which stated that his performance as a Supervisory Investigator would be monitored over the next 30 days, and that his failure to demonstrate immediate and sustained improvement in the timely submission of cases for the Director's review, with a minimum of five cases submitted per week, may result in further corrective action, up to and including dismissal.

59. On April 20, 2018, Mr. Abrams submitted a memo to Angela Simpson, Human Resources Director at MPD, Captain Mack, and Director Crenshaw, refuting the claims raised in the Letter of Concern and informing them that he believed the Letter of Concern was issued to him in retaliation for his protected disclosures to his supervisors and others about the new quotas and timeframe in which he was instructed to complete background investigations of police officer applicants.

60. Later that same day, Director Simpson sent Mr. Abrams a letter notifying him that he would be terminated effective May 11, 2018, and that she was placing him on

administrative leave until that date.

61. Mr. Abrams' termination letter did not state a specific reason for termination.

62. Mr. Abrams believes that he was issued the Letter of Concern and that his employment was terminated because he made protected disclosures under the WPA and refused to violate the law as related to conducting background investigations of police officer applicants.

63. Defendant's unlawful actions have caused Plaintiff to suffer lost wages and employment benefits, pain and suffering, and emotional distress. Plaintiff's damages are continuing in nature.

## COUNT 1

### (Violation of the D.C. WPA, D.C. Code §§ 1.615.51 *et seq.*)

64. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 64 above, as if fully set forth herein.

65. Plaintiff made protected disclosures under D.C. Code § 1-615.52(a)(6) and refused to comply with illegal orders under D.C. Code § 1-615.52(a)(4) when he reported to his supervisors: that MPD had implemented unrealistic quotas and deadlines by which to complete background investigations of police officer applicants; that he would not comply with these new deadlines and quotas in certain cases given he could not meet these demands while also complying with the applicable legal and MPD requirements as related to conducting background investigations; and that the MPD was not in compliance with the ADA and Ban the Box.

66. Plaintiff reasonably believed that his disclosures evidenced gross mismanagement, gross misuse or waste of public resources or funds, a violation of District law, rule, and/or

11

regulations, and a substantial and specific danger to public safety.

67. The individuals who made the decision to conduct and/or caused an examination of Mr. Abrams' fitness of duty to be conducted by issuing him the Letter of Concern were aware of his protected disclosures.

68. The individuals who made the decision to terminate Plaintiff's employment were aware of his protected disclosures.

69. Plaintiff was issued the Letter of Concern and terminated shortly after his disclosures.

70. By and through its conduct, Defendant violated the D.C. Whistleblower Protection Act, D.C. Code §§ 1.615.51 *et seq.* by issuing Mr. Abrams the Letter of Concern and by terminating his employment.

## COUNT 2

### (Wrongful Discharge in Violation of Public Policy — D.C. Code § 5-107.04; DCMR §§ 6-A106 and 6-B873; and Special Orders SO-10-16 and SO-16-06)

71. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 71 above, as if fully set forth herein.

72. The District of Columbia has a public policy that background investigations for new police officer applicants shall be conducted so as to ensure that the police officer applicants possess certain qualifications and so as to ensure that the police officer applicants do not have any disqualifying events or events that may disqualify the applicant. *See* D.C. Code § 5-107.04, DCMR §§ 6-A106, 6-B873, Special Orders SO-10-16 and SO-16-06.

73. Despite this policy, MPD implemented unrealistic quotas and deadlines by which to complete background investigations of police officer applicants that could not be achieved in certain cases while also complying with the applicable public policy as related to conducting background investigations.

74. Mr. Abrams refused to violate the law when he did not complete certain background investigations of police officer applicants in 42 days or less.

75. Mr. Abrams refused to violate the law when he did not complete five background investigations of police officer applicants per week during certain weeks.

76. Mr. Abrams was issued the Letter of Concern and terminated shortly after he did not complete certain background investigations of police officer applicants in 42 days or less and/or shortly after he did not complete five background investigations of police officer applicants per week during certain weeks.

77. By and through its conduct, Defendant issued Mr. Abrams the Letter of Concern and terminated Mr. Abrams' employment in violation of public policy because he refused to violate the law.

## JURY DEMAND AND RELIEF REQUESTED

**WHEREFORE**, Plaintiff demands a trial by jury and judgment in his favor on Counts 1 and 2, reinstatement to his previous position with the District of Columbia or to an equivalent position, reinstatement of his seniority rights, restoration of lost benefits, back pay and interest on back pay, compensatory damages in the amount of $1,000,000 or such other amount to be determined at trial, an amount equal to the tax on the award, pre- and post-judgment interest as allowed by statute, punitive damages, costs and reasonable attorneys' fees, an injunction ordering the DC MPD not to set arbitrary quotas and deadlines within which to complete background investigations and ordering the DC MPD to comply with the ADA and Ban the Box within 30 days of the Court's order, and any other relief as is just and proper.

Date:  August 15, 2018                    Respectfully submitted,

ALAN LESCHT AND ASSOCIATES, P.C.

By: /s/ Sara Safriet

Alan Lescht (#441691)
Sara Safriet (#1012810)
Alan Lescht & Associates, P.C.
1825 K Street NW Suite 750
Washington, D.C. 20006
sara.safriet@leschtlaw.com
T. (202) 315-1742
Fax: (202) 463-6067